Filed 1/22/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HENSEL PHELPS CONSTRUCTION CO., | D076264 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2017-00037690-CU-CD-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SMART CORNER OWNERS ASSOCIATION, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Ronald L. Styn, Judge. Petition denied.

Lorber, Greenfield & Polio, Bruce W. Lorber, Robert B. Titus; McCormick, Barstow, Sheppard, Wayte & Carruth and Scott M. Reddie, for Petitioner.

Finch Thornton & Baird, P. Randolph Finch, Jr., and Daniel P. Scholz, for Associated General Contractors of America, San Diego Chapter, as Amici Curiae on behalf of Petitioner.

Hirsch Closson and Robert V. Closson for California Professional Association of Specialty Contractors, as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Epsten Grinnell & Howell, Anne L. Rauch, Trinette A. Sachrison, Gordon A. Walters; Kasdan Lippsmith Weber Turner, Kenneth S. Kasdan, Michael D. Turner, and Brittany L. Grunau, for Real Party in Interest.

Petitioner Hensel Phelps Construction Co. (Hensel Phelps) is a defendant in construction defect litigation filed by plaintiff and real party in interest Smart Corner Owners Association (Smart Corner).  Hensel Phelps filed a motion for summary judgment contending, among other things, that Smart Corner's claims were barred by the 10-year limitations period under Civil Code section 941.[1]  That statute provides, in relevant part, as follows:  "Except as specifically set forth in this title, no action may be brought to recover under this title more than 10 years after substantial completion of the improvement but not later than the date of recordation of a valid notice of completion." (§ 941, subd. (a).)  Hensel Phelps is a general contractor.  It entered into a prime construction contract with the developer of the mixed-use project at issue.  Smart Corner was not a party to that contract.  In its motion for summary judgment, Hensel Phelps asserted that "substantial completion" under the statute had the same meaning as "substantial completion" in its construction contract with the developer.  Because the parties to the construction contract agreed that "substantial completion" occurred on a

---

[1]     Further statutory references are to the Civil Code unless otherwise stated.

2

certain date at the time of construction, Hensel Phelps argued that the limitations period began to run on that date. Because Smart Corner asserted its claims more than 10 years later, Hensel Phelps contended they were untimely.

The trial court denied the motion. It found that the definition of substantial completion in the contract did not trigger the running of the statute. And, even if it did, Smart Corner had raised a triable issue of fact whether the definition of substantial completion under the contract had been satisfied on the date asserted by Hensel Phelps.

Hensel Phelps petitioned this court for a writ of mandate directing the trial court to vacate its order denying the motion and enter an order granting the motion. Hensel Phelps primarily argued that the date of substantial completion adopted by the parties to the contract "conclusively establishe[d]" the date of substantial completion under the statute. We issued an order to show cause and stayed litigation in the trial court. These proceedings followed.

We conclude the trial court did not err by denying Hensel Phelps's motion for summary judgment. Hensel Phelps offers no authority for the novel proposition that certain parties may, by contract, conclusively establish the date when a limitations period begins to run on another party's cause of action. Likewise, Hensel Phelps has not shown that the statute should be interpreted to adopt the provisions of its construction contract. While we need not precisely define substantial completion under the statute for purposes of this writ proceeding, it is clear that the statute does not simply adopt the date determined by private parties to a contract for their own purposes as the date of substantial completion. We therefore deny the petition.

3

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we recite the historical facts in the light most favorable to Smart Corner as the nonmoving party. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*); *Light v. Dept. of Parks & Recreation* (2017) 14 Cal.App.5th 75, 81.)

Hensel Phelps entered into a prime construction contract with the owner and developer of a mixed-use project in San Diego, California. Hensel Phelps was the general contractor for the project. The project included a residential condominium tower, which would eventually be managed and maintained by Smart Corner. Smart Corner was not a party to the construction contract.

The contract obligated Hensel Phelps to construct the development, including the residential tower. The contract defined the "Work" to be completed by Hensel Phelps as "all that is necessary or required to be done, performed or furnished, in order to construct and complete the Project to the point of readiness for operation and occupancy, pursuant to and in strict compliance with the Contract Documents and applicable law . . . ."[2]

The contract also obligated Hensel Phelps achieve "Substantial Completion" of the entire Work under the contract within a time certain. Substantial Completion was defined by the contract as "that stage in the progress of the Work" when (1) "[s]uch Work or component is sufficiently complete in accordance with the Contract Documents to permit

---

[2]     During construction, two change orders deleted residential unit flooring and appliances from Hensel Phelps's scope of work.

4

lawful occupancy and use thereof for its intended purpose"; (2) "a temporary certificate of occupancy has been issued with no material conditions (i.e., conditions that would impair the issuance of a permanent certificate of occupancy) that in Owner's reasonable judgment are not susceptible of being completed in a timely manner"; (3) "all Project utilities have been properly installed and approved by the applicable utility companies"; (4) "[t]he Architect has issued its Certificate of Substantial Completion"; and (5) "Contractor has certified that all remaining Work (as such remaining work is mutually determined by Contractor, Architect, and Owner in their final review of the Project) will not interfere with Owner's use or enjoyment of the Project and is capable of being completed and will be completed within sixty (60) consecutive calendar days following the date on which the Architect shall have issued a certificate of Substantial Completion."

The contract provided, "Minor corrective or deficient Work (such as touch-up painting or replacement of minor broken or defective materials), or minor incomplete Work, shall not be deemed a cause for asserting that the Work has not achieved Substantial Completion, provided, however, that the conditions requiring such corrective, deficient or incomplete Work are not such as would render any portion of the Work unsuitable for occupancy or use by Owner or any prospective purchaser of a condominium unit, or would result in the inclusion in any temporary certificate of occupancy of any condition not acceptable to Owner in its reasonable discretion. . . . However, the Work will not be considered sufficiently complete in accordance with the Contract Documents or suitable for Substantial Completion review until all Project systems included in the Work are operational as designed and scheduled, all designated

5

or required governmental inspections and certifications have been made and posted . . . . In general, the only remaining Work shall be minor in nature, so that the Owner could occupy the building on that date and the completion of the Work by the Contractor would not materially interfere or hamper the Owner's (or those claiming by, through or under Owner) normal business operations."

"Upon achieving Substantial Completion . . . , Contractor shall provide Owner with written notice requesting that Owner file such notice(s) of completion for the Work as may be established by any applicable laws. If Owner objects to such notice(s) being filed, it shall notify Contractor within ten (10) days of its receipt of Contractor's written notice, whereupon the parties shall promptly meet to resolve such objections."

The project architect signed the Certificate of Substantial Completion on May 24, 2007. The Certificate stated, "The Work performed under this Contract has been reviewed and found, to the Architect's best knowledge, information and belief, to be substantially complete. Substantial Completion is the state in the progress of the Work when the Work or designated portion is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." In accordance with the contract, a list of items to be completed or corrected ("punchlist" items) was attached to the Certificate. It included the entry canopy glass, the rooftop handicap lift, the security system, four streetlights, mail box lock, spa-elevator lift, and "[l]ighting at BBQ." A Hensel Phelps representative signed the certificate, agreeing that "[t]he Contractor will complete or correct the Work on the list of items attached hereto within Sixty (60) days from the above date of Substantial Completion."

6

An owner's representative also signed the certificate, stating that "[t]he Owner accepts the Work or designated portion as substantially completed and will assume full possession at 8:00 a.m. on July [__], 2007."[3]

On the same date as the Certificate of Substantial Completion, Hensel Phelps, the owner, and a Smart Corner representative wrote to the City of San Diego and requested a temporary certificate of occupancy "in order that we may complete the following items, none of which are fire, life, health safety, or disabled access features[:] [¶] 1. Residential Unit Flooring [¶] 2. Residential Unit Appliances." The City granted temporary occupancy for 30 days.

The City of San Diego continued to perform required inspections of the project. The project only partially passed its final fire inspection in early June 2007. The project fully passed in late June, with final alarm, sprinkler, and underground approvals. The project passed several structural inspections, but in early July it failed a rough framing inspection. Similarly, the project failed its final structural inspection twice in July. It did not pass the final structural inspection until July 17, 2007. The project also failed its final electrical inspections in early July.

The owner recorded a notice of completion on July 10, 2007. The City of San Diego issued a certificate of occupancy for around two dozen individual condominiums

---

[3]    The date in the document is handwritten and difficult to discern based on the papers submitted to this court. Hensel Phelps contends the date is July 5; Smart Corner responds that the date is July 25. We need not address this factual dispute in this proceeding.

7

and the common areas on July 6, 2007. The City issued a certificate of occupancy for the project generally on July 17, 2007. For some time thereafter, the City continued to issue certificates of occupancy for individual condominiums.

On July 6, 2017, Smart Corner provided notice to Hensel Phelps of its construction defect claim. The notice identified numerous alleged defects in the project's windows, doors, railings, private decks, waterproofing, concrete, bathtubs and showers, plumbing, venting, roof, and parking structure. Hensel Phelps declined to participate in prelitigation dispute resolution, and Smart Corner filed this lawsuit. The operative complaint alleges a single cause of action for construction defects under the Right to Repair Act (§ 895 et seq.).

After a year of litigation, Hensel Phelps filed its motion for summary judgment. As relevant here, Hensel Phelps contended that Smart Corner's construction defect claim was barred by the 10-year statute of repose in section 941. Hensel Phelps argued that the statute began to run on May 24, 2007, when the project architect issued its Certificate of Substantial Completion and the provisions for substantial completion under the contract were satisfied. In its opposition, Smart Corner disputed that Hensel Phelps could apply its contractual definition of substantial completion to the statute. Even if it did apply, Smart Corner argued that there were triable issues of fact whether the contractual definition was satisfied on the date identified by Hensel Phelps. Smart Corner pointed out that the project had not passed a number of important City inspections by that date, including several structural inspections, several fire inspections, and two electrical inspections. Smart Corner also pointed out that the vast majority of the individual

8

residential units did not have appliances or complete flooring and the City's temporary certificate of occupancy lapsed for a period before the City began issuing permanent certificates of occupancy. Under these circumstances, in Smart Corner's view, a reasonable trier of fact could find that the project was not substantially complete under the statute.

In a written order, the trial court denied Hensel Phelps's motion for summary judgment. The court found, as an initial matter, that Hensel Phelps had not provided any authority to support its argument that its contractual definition of substantial completion should apply to the statute. But, even assuming that the contractual definition applied, the court found that Hensel Phelps had not established an absence of triable issues of material fact. To support its assertion that substantial completion occurred on May 24, 2007, Hensel Phelps had cited several pieces of evidence, but not the Certificate of Substantial Completion. The court therefore found the assertion unsupported. The court also determined there were triable issues of fact whether the temporary certificate was issued without "material conditions" because several important inspections had not yet been completed.

As noted, Hensel Phelps challenged the court's order by petition for writ of mandate in this court, we issued an order to show cause, and these proceedings followed.

DISCUSSION

I

*Summary Judgment Standards*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.)

"[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial." (*Aguilar*, *supra*, 25 Cal.4th at p. 851.) The parties do not directly address who would bear the burden of proving whether Smart Corner's claims are barred by the 10-year statutory period in section 941. With a conventional statute of limitation, the defendant bears the burden of pleading and proving that a plaintiff's cause of action is time-barred. (See *PGA West Residential Assn., Inc. v. Hulven International, Inc.* (2017) 14 Cal.App.5th 156, 178.) With a statute of repose, however, the plaintiff bears the burden of pleading and proving that its cause of action is *not* time-barred. (*Ibid.*)

10

Although we have found no published authority considering whether Civil Code section 941 is a statute of limitation or a statute of repose, courts have held that similar language in Code of Civil Procedure section 337.15 constitutes a statute of repose. (See, e.g., *San Diego Unified School Dist. v. County of San Diego* (2009) 170 Cal.App.4th 288, 308 (*San Diego Unified*); *Inco Development Corp. v. Superior Court* (2005) 131 Cal.App.4th 1014 (*Inco*).) In their briefing, Hensel Phelps and Smart Corner agree that Civil Code section 941 is a statute of repose. And, based on the parties' arguments, it does not appear that the allocation of the burden of proof would affect our disposition here. We therefore assume, without deciding, that Civil Code section 941 is a statute of repose for which a plaintiff bears the burden of proof.

"When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*).)

If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) "The plaintiff . . . shall not rely upon the allegations or denials of

11

its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record and the determination of the trial court de novo." (*Kahn*, *supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler*, *supra*, 25 Cal.4th at p. 768.)

## II

### *Substantial Completion in Construction Defect Litigation*

The primary dispute in this matter concerns the proper interpretation of section 941, particularly its use of the phrase "substantial completion." The statute provides, "Except as specifically set forth in this title, no action may be brought to recover under this title more than 10 years after substantial completion of the improvement but not later than the date of recordation of a valid notice of completion." (§ 941, subd. (a).)

"Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the

12

language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of L.A.* (2004) 34 Cal.4th 733, 737.)

Section 941 was enacted in 2002 as part of the Right to Repair Act. (Stats. 2002, ch. 722, § 3.) The Right to Repair Act, codified at section 895 et seq., "sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury." (*McMillan Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 247.)

Because Civil Code section 941 is based on prior construction defect limitations statutes, particularly in its use of the phrase substantial completion, we will begin with a brief historical overview. Prior to the enactment of Civil Code section 941, the outside limitations periods for construction defect claims were governed by Code of Civil Procedure sections 337.1 and 337.15. These statutes, enacted in 1967 and 1971 respectively, established that an action must be brought within certain time periods after "substantial completion of such improvement," i.e., four years for patent construction defects (Code Civ. Proc., § 337.1, subd. (a), added by Stats. 1967, ch. 1326, § 1) and 10 years for latent construction defects (*id*., § 337.15, subd. (a), added by Stats. 1971, ch. 1569, § 1). These statutes reflect a "general legislative concern about the economic

effects of indefinite 'long tail' defect liability on the construction industry." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 374.) The Legislature "carefully considered how to provide a fair time to discover construction defects, and to sue upon such defects if necessary, while still protecting a vital industry from the damaging consequences of indefinite liability exposure." (*Id*. at p. 377.)

The 10-year period in Code of Civil Procedure section 337.15 "is correctly viewed as a statute of repose that does not apply 'traditional concepts of accrual of a claim, but is tied to an independent, objectively determined and verifiable event, i.e., the date of substantial completion of an improvement.' " (*San Diego Unified*, *supra*, 170 Cal.App.4th at p. 308; accord, *Inco*, *supra*, 131 Cal.App.4th at p. 1021.) Similarly, Code of Civil Procedure section 337.1 "establishes an absolute four-year limitations period (subject to the exceptions in subdivisions (b) and (d)) within which a plaintiff must bring an action against defendants to which the statute applies, regardless of when the patent deficiency is discovered or when the harm occurs." (*Tomko Woll Group Architects, Inc. v. Superior Court* (1996) 46 Cal.App.4th 1326, 1337.)

The statutes did not initially explain the phrase substantial completion. The early case of *Eden v. Van Tine* (1978) 83 Cal.App.3d 879 concluded "a definition of the phrase was unnecessary" in light of then-existing statutes defining actual completion as occupation or acceptance of a work of improvement by an owner. (*Id*. at p. 884.) The court explained, "We are satisfied that the phrase 'substantial completion' refers to a point in time that is easily ascertainable. It is possible that on some occasions the date of 'substantial completion' will coincide with first delivery or first occupancy of the

14

improvement (as urged by plaintiffs), but for the reasons stated, an earlier date is not precluded." (*Id.* at p. 885.)

After *Eden*, the Legislature amended Code of Civil Procedure section 337.15 to further define its limitations period. (See Stats. 1981, ch. 88, § 1.) The Legislature added subdivision (g), which states, "The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: [¶] (1) The date of final inspection by the applicable public agency. [¶] (2) The date of recordation of a valid notice of completion. [¶] (3) The date of use or occupation of the improvement. [¶] (4) One year after termination or cessation of work on the improvement. [¶] The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement." (Code Civ. Proc., § 337.15, subd. (g).)

The new subdivision identifies four triggering events that begin the running of the 10-year limitations period, but their formal relationship to the phrase "substantial completion" is somewhat ambiguous. The Legislature indicated its intent to " 'define the term "substantial completion" ' " with the new subdivision. (*Schwetz v. Minnerly* (1990) 220 Cal.App.3d 296, 307.) As one court noted, "The record in our case includes the Assembly Committee on Judiciary's digest of the bill that became Code of Civil Procedure section 337.15, subdivision (g). This digest comments that 'The bill's proponents state the definition of "substantial completion" in the bill is needed so that the

15

various professions and trades rendering services to an improvement may be able to predict with certainty when their liability for "latent deficiencies" will terminate.' " (*Industrial Risk Insurers v. Rust Engineering Co.* (1991) 232 Cal.App.3d 1038, 1045.) Thus, based on both the plain meaning and legislative intent, this court previously held that "it is clear the intent [of subdivision (g)] was to define what event triggered the 10-year period . . . . When the work of improvement meets one of the four criteria of [Code of Civil Procedure] section 337.15, subdivision (g), the 'improver'—whether an architect, engineer, subcontractor, contractor, or developer—is entitled to raise the provisions of [Code of Civil Procedure] section 337.15, subdivision (g), as a bar to an action which seeks damages for latent defects after the 10-year period has passed." (*Schwetz*, at p. 308.) Other courts have also interpreted the four triggering events in subdivision (g) as defining "substantial completion" for purposes of the statute. (See, e.g., *Gundogdu v. King Mai, Inc.* (2009) 171 Cal.App.4th 310, 317.)

By contrast, the court in *Nelson v. Gorian & Associates, Inc.* (1998) 61 Cal.App.4th 93, 96 (*Nelson*), held that "substantial completion" could occur on a date other than the four triggering events in Code of Civil Procedure section 337.15, subdivision (g). The plaintiffs in *Nelson* purchased an empty, graded residential lot. (*Nelson*, at p. 95.) After they experienced soil subsidence, the plaintiffs filed suit against the lot's developer and several professionals, including a civil engineer, a soils engineer, and a grading subcontractor. (*Ibid*.) Grading at the lot was completed by December 1985. (*Ibid*.) Several months later, the soils engineer filed a final report and certificate. (*Ibid*.) Plaintiffs purchased the lot in 1988 and filed suit in 1996. (*Ibid*.)

16

"The trial court ruled that the action was time-barred because the engineering and grading work was substantially completed in 1985." (*Nelson*, *supra*, 61 Cal.App.4th at p. 95.) The reviewing court affirmed. It explained, "The trial court correctly ruled that 'substantial completion' was the controlling date and that subdivision (g) 'does not define [subdivision a]. In other words, these four conditions do not define substantial completion . . . .' " (*Id*. at p. 96.) "The trial court correctly ruled that the notice of completion date ([Code Civ. Proc.,] § 337.15, subd. (g)(2)) did not control if the improvement was substantially completed at an earlier date. . . . Because [the lot] was substantially completed in December 1985, we look to the last sentence of subdivision (g), which states that '[t]he date of substantial completion shall relate specifically to the performance . . . of construction or construction services by each profession or trade rendering services to the improvement.' " (*Nelson*, at p. 97.)

Against this historical backdrop, the Legislature enacted Civil Code section 941. As noted, that statute incorporates the phrase "substantial completion," but it identifies only a single triggering event. It states, "Except as specifically set forth in this title, no action may be brought to recover under this title more than 10 years after substantial completion of the improvement but not later than the date of recordation of a valid notice of completion." (Civ. Code, § 941, subd. (a).) The Legislature recognized that existing law established a 10-year statute of repose based on "substantial completion" under Code of Civil Procedure section 337.15. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 26, 2002.) Explaining the new statute, the Legislature stated, "The bill specifies one, two and four-year periods for the filing of

17

claims for alleged violations of certain standards.  Unless a shorter period is specified, no action may be brought to recover for alleged violations more than 10 years after substantial completion, as defined in [Code of Civil Procedure section] 337.15(g)(2)." (*Ibid.*; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002.)[4]

The Legislature explicitly identified Code of Civil Procedure section 337.15 and its triggering event in subdivision (g)(2) as the basis for new Civil Code section 941.  However, there are two important differences.  The new statute omits the remaining three triggering events in Code of Civil Procedure section 337.15, subdivisions (g)(1), (g)(3), and (g)(4).  The new statute also omits language narrowing the relevant scope of work for the date of substantial completion to the specific tasks undertaken by each profession or trade rendering services to the improvement under Code of Civil Procedure section 337.15, subdivision (g).  Authorities interpreting the older statute are therefore relevant, but they may not be dispositive in all circumstances.

---

[4]     We previously informed the parties that we intended to take judicial notice, on our own motion, of certain legislative history materials related to the enactment of section 941.  (See Evid. Code, §§ 455, subd. (a), 459, subd. (c); *Hogen v. Valley Hosp.* (1983) 147 Cal.App.3d 119, 125.)  Having reviewed the parties' responses, we conclude judicial notice is proper.  (See Evid. Code, § 452; *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)  We will therefore take judicial notice of the materials identified in the text above, as well as (1) Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002; and (2) Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002.

# III

## *Contractual and Statutory Concepts of Substantial Completion*

As noted, Hensel Phelps contends that the statute adopts the concept of substantial completion as determined by the parties to its construction contract. It claims that the contracting parties' agreement on a date of substantial completion is "conclusive" and cannot be disputed in later litigation—except perhaps upon a showing of forgery, duress, or similar invalidity.

The legal basis for Hensel Phelps's contention is unclear. Hensel Phelps does not cite any legislative history, case authority, or secondary sources that support its interpretation. It cites commentary on form contracts published by the American Institute of Architects (AIA) for the proposition that substantial completion is an important concept in private construction contracts. Hensel Phelps notes that AIA form contracts are widely used and respected in the construction industry. In particular, Hensel Phelps points out that the AIA has created a standard form, the Certificate of Substantial Completion, to certify when substantial completion has occurred in a construction project. It asserts that the AIA Certificate of Substantial Completion has been in use in one form or another since 1963.

Other than noting these facts, Hensel Phelps does not explain why we should interpret section 941 as incorporating the date of substantial completion as determined by the parties to Hensel Phelps's private construction contract. The statute itself does not provide any indication that it has adopted any AIA standards or the specific determination of private parties under a construction contract. The available legislative

19

history does not mention the AIA in connection with substantial completion. Numerous California authorities have interpreted the phrase "substantial completion" since it was first used, but none of these authorities references the AIA's discussion of substantial completion. Given the decades-long history of these statutes, and the decades-long use of AIA forms, the absence of any legal authority connecting the two is striking.[5]

Outside California, courts have rejected the contention that the legal or statutory concept of substantial completion must conform to the date of substantial completion as determined by private parties to a contract. In *Holy Family Catholic Congregation v. Stubenrauch Associates, Inc.* (1987) 136 Wis.2d 515 (*Holy Family*), the Court of Appeals of Wisconsin considered the same dispute at issue here, albeit in a somewhat different procedural posture. The plaintiff, a religious congregation, sued an architect and general contractor for construction defects in a new church building. (*Id*. at p. 517.) The architect and general contractor argued that the congregation's suit was untimely under Wisconsin's former statute of repose, which barred any action brought " 'more than 6 years after the substantial completion of construction,' " because the congregation held its first service in the building more than six years prior to bringing suit. (*Id*. at pp. 517-518 & fn. 1, quoting former Wis. Stat. § 893.89.) The trial court agreed and granted

---

5 Hensel Phelps correctly points out that AIA form contracts serve as a kind of surrogate commercial code for contracting parties. (See *Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1259 (*Brisbane*).) But it acts as a surrogate commercial code only to the extent its contractual provisions apply. Smart Corner is not a party to the contract, and its claim is not based on an AIA contractual provision.

summary judgment. (*Id.* at p. 519.) In the congregation's subsequent appeal, the architect argued that the statutory phrase "substantial completion" should be interpreted in light of the construction contract, which empowered the architect to determine the date of substantial completion. (*Id.* at pp. 521-522.) The appellate court rejected this argument. It explained, "Without explicit statutory direction, we cannot imply a legislative intent to empower one party to trigger the six-year limitation period by its unilateral actions." (*Id.* at p. 522.) "For purposes of the statutory limit, it is the court, not the architect, who determines the date of substantial completion. Thus, while the date of an architect's certificate of substantial completion may be persuasive in determining the statutory date of substantial completion, we conclude that the dispositive event in this case was Holy Family's occupation of the building for its intended purpose." (*Id.* at pp. 524-525.)

Similarly, in *Allen v. A&W Contractors, Inc.* (La.App. 1983) 433 So.2d 839, the Louisiana Court of Appeal held that an arbitrator did not exceed his powers by determining a date of substantial completion that differed from the date determined by the parties to a contract. It explained, "We acknowledge, as we must, that the contract under consideration provides for execution by the owner's architect of a certificate of substantial completion which 'shall establish the Date of Substantial Completion . . . .' We do not consider this provision to be sacrosanct if the facts show substantial completion at a date earlier than that certified by the owner's architect. In the instant case, the arbitrator concluded, after a two day hearing, that the project was substantially

21

complete on March 2, 1981.  We feel that the power to arbitrate the dispute between the parties included the authority to make this determination."  (*Id*. at p. 841.)

We reject Hensel Phelps's argument for similar reasons.  The date of substantial completion is an objective fact about the state of construction of the improvement, to be determined by the trier of fact.  It is a statutory standard, not a contractual one.  The parties to a construction contract may not arrogate to themselves the ability to conclusively determine when the statutory limitations period begins to run.

Hensel Phelps claims that adopting the substantial completion date determined by the contracting parties is consistent with the legislative purpose of tying the statute of repose to an "objectively determined and verifiable event, i.e., the date of substantial completion of the improvement."  (*Inco*, *supra*, 131 Cal.App.4th at p. 1020.)  It is not necessary to adopt Hensel Phelps's proposed substantial completion date to provide an objectively verifiable standard.  The statutory standard of substantial completion is objectively determined and verifiable; the facts supporting a showing of substantial completion can be ascertained and are within the knowledge of contractors and developers.  The focus on an objectively determined and verifiable standard contrasts with traditional concepts of claim accrual, which may depend in part on a plaintiff's subjective awareness.  "Unlike these statutes of limitations which begin to run only when the defect was or should have reasonably been discovered, the 10-year period in [Code of Civil Procedure] section 337.15 imposes an 'absolute requirement' that a lawsuit to recover damages for latent defects be brought within 10 years of substantial completion of the construction, whether or not the defect was or even could have been discovered

22

within that period." (*Id*. at p. 1020.) The statutory standard of substantial completion ensures that contractors and developers can, on the basis of evidence available to them, determine with reasonable certainty when their liability for construction defects will end.

Hensel Phelps, however, appears to demand absolute certainty. It argues, "[Smart Corner's] position and [the trial court's] conclusion effectively writes the substantial completion language out of the statute and will make it impossible for a general contractor to ever have an objectively determined and verifiable commencement date for the ten-year statute of repose to commence based on a substantial completion date." Hensel Phelps does not explain how it would be "impossible" for the general contractor to determine whether its own project is substantially complete without the aid of the contractual Certificate of Substantial Completion. While reasonable minds may differ over the exact date of substantial completion under the statute, such a disagreement does not make it impossible for a general contractor to know with reasonable certainty when its liability will end. A statutory standard is often subject to factual disputes; that is the nature of our adversarial legal system. The fact that some uncertainty may remain under the statutory standard is not a reason to adopt a date simply because it appears on a contemporaneous certificate. And where, as here, the developer has recorded a notice of completion, that provides further notice of the outside date when liability will end under section 941 because the notice of completion is specifically identified in the statute as a triggering event (assuming it is valid, see *Scott, Blake & Wynne v. Summit Ridge Estates, Inc.* (1967) 251 Cal.App.2d 347, 357).

23

Moreover, we note several additional difficulties in simply adopting a contractual concept of substantial completion as the statutory standard. First, of course, Smart Corner did not agree to the concept of substantial completion in Hensel Phelps's contract. It would be unfair to hold Smart Corner to a standard it did not agree to in the absence of any indication the Legislature intended to adopt it by statute.[6] Second, it is unclear how courts would apply a contractual concept in practice. Does the statute embody an AIA form contract (and, if so, which version)? Or does the statute embody whatever contract governs the project at issue, regardless of its content? In its narrow focus on the "conclusive" nature of the contractual determination here, Hensel Phelps does not address these issues.[7]

Viewed as a whole, the contractual concept of substantial completion is an imperfect fit for the standard of substantial completion under the statute. As Hensel Phelps emphasizes, the date of substantial completion under the contract is the product of an agreement between the owner and general contractor (and to some extent the

---

[6] We note that parties may, by contract, alter the statutory limitations period for claims between them. (See *Brisbane*, *supra*, 216 Cal.App.4th at pp. 1253-1254 ["[P]ublic policy principles applicable to the freedom to contract afford sophisticated contracting parties the right to abrogate the delayed discovery rule by agreement."].) The contract here had such a provision, but it cannot apply to Smart Corner because Smart Corner did not agree to it.

[7] At the summary judgment hearing in the trial court, Hensel Phelps admitted that a contractual provision that established substantial completion as the date the contractor begins the project would not be sufficient under the statute to trigger the running of the limitations period. This admission illustrates the principle that a statutory, not contractual, standard must govern substantial completion for purposes of the statute.

architect). The contract lays out a procedure by which the parties determine—through negotiation—whether to deem the project substantially complete. The contractor notifies the owner and architect that it believes the work is substantially complete, and a series of inspections occur. The owner may request additional work be conducted before substantial completion. Only once the owner accepts the project as substantially complete does the architect prepare a Certificate of Substantial Completion.

Indeed, the contractual standard of substantial completion depends, in part, on the judgment and discretion of the owner. For example, contract states, "Minor corrective or deficient Work . . . , or minor incomplete Work, shall not be deemed a cause for asserting that the Work has not achieved Substantial Completion, provided, however, that the conditions requiring such corrective, deficient or incomplete Work are not such as would render any portion of the Work unsuitable for occupancy or use by Owner or any prospective purchaser of a condominium unit, or would result in the inclusion in any temporary certificate of occupancy of *any condition not acceptable to Owner in its reasonable discretion. . . .* In general, the only remaining Work shall be minor in nature, so that the Owner could occupy the building on that date and the completion of the Work by the Contractor would not materially interfere or hamper the Owner's . . . normal business operations." (Italics added.)

Our review of the contractual standard makes clear that the agreed-upon date of substantial completion under the contract may be different for different parties considering the same state of actual construction. Hensel Phelps admits, in its briefing, that substantial completion under the contract is "based on the status of the project *and*

25

*the terms and conditions in the contract between the general contractor and owner*."
(Italics added.)  This circumstance makes sense, of course, in the context of the
commercial transaction between the owner and general contractor.  Substantial
completion is an important contractual milestone.  The parties will approach the date of
substantial completion with different interests and incentives, which they will pursue in
their negotiations to reach agreement.  The provisions of the contract create enforceable
rights and responsibilities if the parties are unable to agree.  But precisely because the
determination of contractual substantial completion involves interactions and negotiations
between the parties, based on the terms and conditions of the contract, it would be
inappropriate to simply adopt them (or their results) as conclusively establishing the date
of substantial completion under section 941.  Industry custom and practice as embodied
by common construction contract provisions may be relevant to the statutory standard,
but the statute does not simply adopt the parties' private agreement regarding whether
those provisions have been satisfied.

What matters, instead, is the actual state of construction of the improvement and
whether it is substantially complete.  We agree with the reasoning in *Nelson*, *supra*,
61 Cal.App.4th at page 97, that the plain meaning of the statute compels the conclusion
that a recorded notice of completion is not the only way to trigger the running of the
statute.  Substantial completion of the improvement, based on the actual state of
construction, also begins the limitations period.  (§ 941, subd. (a).)  The agreed-upon date
of substantial completion (and the Certificate of Substantial Completion) may be

26

persuasive indirect evidence of the state of construction, depending on the circumstances (see *Holy Family*, *supra*, 136 Wis.2d at pp. 524-525), but it is not conclusive.

The foregoing discussion is sufficient to dispose of Hensel Phelps's petition. Hensel Phelps requests "a bright line rule that, if an AIA Certificate of Substantial Completion is issued and all the provisions of the Certificate have been complied with, then the issuance of the Certificate of Substantial Completion conclusively establishes the date of Substantial Completion for purposes of the commencement of the ten-year statute of repose." Such a bright line rule is not supported by the language of the statute, its legislative history, or previous authorities. The proposed rule improperly confers on private parties the ability to determine when the limitations period begins to run on another party's claim. We therefore decline to adopt it. Substantial completion under the statute is a factual issue, to be determined by the trier of fact based on competent evidence concerning the actual state of construction of the improvement. We leave further explication of the statutory standard to future cases. Hensel Phelps has not shown the court erred by denying its motion for summary judgment.[8]

---

[8] Smart Corner's request, in its return, that we discharge the order to show cause and direct the trial court to hear a motion for sanctions is denied.

## DISPOSITION

The petition is denied.  The stay issued August 29, 2019 is vacated.  Smart Corner is awarded its costs.  (Cal. Rules of Court, rule 8.493(a).)

GUERRERO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.